UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VESNA NUON,

      **Plaintiff**

v.

**CITY OF LOWELL and
BRIAN M. KINNEY, in his
Individual capacity,**

      **Defendants**

**C.A. NO. 09-11161-WGY**

## DEFENDANT CITY OF LOWELL'S MEMORANDUM IN SUPPORT OT ITS MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

In Plaintiff's First Amended Complaint, the single count against the City of Lowell "(City") alleges it was negligent and enumerates six reasons for the purported negligence acts of the City.[1] The Plaintiff alleges five (5) counts against the defendant Brian Kinney: two (2) violations of 42 U.S.C. §1983 and three (3) state claims. All five (5) counts against Kinney allege intentional acts by Kinney.

### FACTS

Consistent with Local Rule 56.1, with respect to the Facts, please see the attached Concise Statement of Undisputed Material Facts of Record in Support of Defendant City of Lowell's Motion for Summary Judgment.

### STANDARD OF REVIEW

"Summary judgment is authorized 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

---

[1] Plaintiff dismissed a count against the City alleging a violation of 42 U.S.C. §1983 under a <u>Monell</u> theory of liability that had been alleged in his original Complaint.

material genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004) quoting Fed.R.Civ.P.56(c).   "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Davila v. Corporacion de P.R. para la Diffusion Publica, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). "[T]he court's task is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and internal quotation marks omitted).

"A dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party.'" Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citations omitted). "A fact is material if it 'carries with it the potential to affect the outcome of the suit under the applicable law.'" Id. (citations omitted). The court must view all the evidence in the light most favorable to the nonmoving party, "drawing all reasonable inferences in that party's favor." Thomas v. Eastman Kodak Co., 183 F.3d 38, 42 (1st Cir. 1999).

A party opposing a motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Summary judgment is appropriate if the nonmoving party simply relies on "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); see also Conward v. Cambridge School Committee, 171 F.3d 12, 18 (1st Cir. 1999) (court refused "to indulge rank speculation or unsupportable hyperbole").

For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts

that demonstrate the existence of an authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000). "When a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact... and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computers, Inc., 40 F.3d 11, 12 (1st Cir. 1994).

## ARGUMENT

I.   **Plaintiff Cannot Establish Liability Against The Defendant, City Of Lowell Because His Presentment Failed To Comply With The Requirements Of G.L.c.258, §4.**

Negligent actions against a public body must be brought in accordance with M.G.L.c.258, the Massachusetts Tort Claims Act ("MTCA") as it is the "exclusive" remedy for such actions. In pertinent part, M.G.L. c.258, §4 states:

> A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing...

The notice requirement is a condition precedent to maintaining a suit against a public employer. See Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 283 (1985). Presentment must be made "in strict accordance with [G.L.c.258]." Weaver v. Commonwealth, 387 Mass. 43, 47 (1982). A presentment letter "should be precise in identifying the legal basis of a plaintiff's claim...not so obscure that educated public officials should find themselves baffled or misled with respect to....a claim which constitutes a proper subject for suit within G.L.c.258." Gilmore v. Commonwealth, 417 Mass. 718, 723 (1994). Specific claims must be mentioned in the presentment letter. Wightman v. Town of Methuen, 26 Mass. App. Ct. 279, 281-282 (1988); See Richardson v. Dailey, 424 Mass. 258 (1997) (presentment letter failed to mention any claim against municipality); and Tambolleo v. Town of West Boylston, 34 Mass. App. Ct. 526 (1993) (presentment letter failed to specify a viable theory against municipality). The public employer

3

need not show prejudice to rely upon the plaintiff's failure of presentment. <u>Weaver v.</u> <u>Commonwealth</u>, 387 Mass 43, 49 (1982). But for the MTCA, the City enjoys sovereign immunity with respect to any tort claim. See generally, <u>Wong v. Univ. of Mass.</u>, 438 Mass. 29 (2002).

While Plaintiff claims in his December 8, 2008 letter that unknown "superior officers responsible for [the Lowell Police Department's ("LPD")] training, supervision and discipline" were negligent, Plaintiff fails to set forth any specific facts or theory of liability to support this allegation. Concise Statement of Undisputed Material Facts of Record in Support of Defendant City of Lowell's Motion for Summary Judgment ("Lowell Undisputed Facts"), ¶35. It is a conclusory statement which is not supported by the contents of the December 8, 2008 letter. As such, the City is entitled to judgment as a matter of law as the Plaintiff failed to set forth any specific facts to support his bald assertions regarding the training, supervision, and disciplining of its officers. Rather, the letter specifies three purported negligent actions: responding to the wrong type of police call; a demand for identification and arresting Plaintiff for alleging calling LPD to report Kinney deliberate acts; and failing to train Kinney as he arrested Plaintiff and charged him for disorderly conduct for attempting to file a citizen's complaint.

The first alleged negligent act was that was the City incorrectly dispatched Kinney to 174 Hale Street for an unwanted person call instead of the purported missing juvenile call. The undisputed facts show that LPD received an unwanted and unknown male call from a female who identified herself as Jessica from 174 Hale Street, Apartment A on March 22, 2008 and LPD dispatched officers to respond to that unwanted person call. Lowell Undisputed Facts, ¶¶6, 7, 8, and 13. LPD did not receive any purported call for a missing juvenile as claimed by Plaintiff and Mr. Sambar Or. Lowell Undisputed Facts, ¶¶12 and 13. For whatever reason, Mr. Or deliberately deceived Kinney and lied to Kinney claiming he called LPD to report his daughter left home

4

with her boyfriend and that she was a "missing juvenile." Lowell Undisputed Facts, ¶¶12 and 13. In short, LPD responded to the correct call and there was no negligence on behalf of the City or Kinney in responding to 174 Hale Street for the unwanted person call.[2]

The other two purported allegations of negligence against the City are intentional acts allegedly committed by Kinney and are discussed below.

II.     **The Plaintiff Cannot Establish Liability Against The City For The Intentional Acts Of An Employee As The City of Lowell Is Immune From Any Claim Of An Intentional Tort By Its Employee(s).**

Under the MTCA, a public employer cannot be held liable for intentional torts of its employees. M.G.L. c.258, §10(c) exempts liability for a municipality on:

> any claim arising out of an intentional tort including … false imprisonment, false arrest…malicious prosecution, malicious abuse of process. libel, slander ….

As stated earlier, but for the MCTA, the City enjoys sovereign immunity with respect to any tort claim. See generally, Wong v. Univ. of Mass., 438 Mass. 29 (2002). Given the unambiguous statutory language, any cause of action against the City based on alleged intentional torts of its employee police officer(s), the Plaintiff cannot establish any liability against the City. While Plaintiff can try to transmogrify his claims into allegations of negligence against the City; it is clear from his pleadings that this case is about intentional acts, specifically, that Kinney abused his position as a police officer who false arrested Plaintiff after Plaintiff tried to report Kinney's intentional misconduct. The law defines negligence as the failure or a person [or entity] to exercise that degree of car which a reasonable person would exercise in the circumstances. Morgan v. Lalumiere, 22 Mass. App. Ct. 262, 267(1986). Negligence is doing something that a reasonably prudent person in the ordinary course of human events would not do, or failing to do

---

[2]     While the City disputes that the nature of the original call and Kinney's request for Plaintiff's identification are material facts, for the purpose of its motion for summary judgment, the City assumes the Court will treat those as 'material.'

something that a reasonable person of ordinary prudence would do. Altman v. Aronson, 231 Mass. 588, 591 (1919). Negligence is failing to remove snow or ice from an entrance or failing . Negligence is not fabricating a reason to falsely arrest a person – that is an intentional tortuous act for which the City is immune from liability. Therefore even if Plaintiff allegations as set forth in his pleadings are to be believed, the City is entitled to summary judgment as a matter of law.

**III.    Based On Plaintiffs Various Admissions By Silence And Conduct, the Plaintiff Cannot Establish Liability Against Either Defendant As Probable Cause Existed For His Arrest And Said Probable Cause Was Determined By A Court of Competent Jurisdiction.**

Under the Federal Rules of Evidence, a statement is not hearsay if the statement is offered against a party and is a statement of which the party has manifested an adoption or belief in its truth. FRE 801(d)(2)(B). "Where a party is confronted with an accusatory statement which under the circumstances, a reasonable person would challenge, and the party remains silent or responds equivocally, the accusation and the reply may be admissible on the theory that the party's response amounts to an admission of the truth of the accusation. Commonwealth v. MacKenzie, 413 Mass. 498, 506 (1992). "Actions and statements that indicate consciousness of guilt on the part of the defendant are admissible and together with other evidence, may be sufficient to prove guilt." Brown v. Commonwealth, 407 Mass. 84, 90 (1990) quoting Commonwealth v. Montecalvo, 367 Mass. 46, 52 (1975) (citations omitted). "Ad admission may be [inferred] from conduct as well as from words." Brown, supra at 90 quoting Commonwealth v. Bonomi, 335 Mass. 327, 348 (1957).

For an admission by silence to be admissible it must be apparent that the party has heard and understood the statement, had an opportunity to respond, and the context was one in which the party would have been expected to respond. Commonwealth v. Olszewski, 416 Mass. 707, 719 (1993). "Adoption or acquiescence may be manifested in any appropriate manner. See 1972 Proposed Rules, Notes to Subdivision (d)(2)(B). "When silence is relied upon, the theory is that

the person would, under the circumstances, protest the statement made in his presence, if untrue." Id. "The decision in each case calls for an evaluation in terms of probable human behavior." Id.

In determining whether the silence or conduct is admissible, the court considers the nature of the statement, the identity of the person offering the testimony, the identity of the maker of the statement, the context, and whether the circumstances as a whole show that a lack of a denial is so unnatural as to support an inference that the undenied statement was true. Weston-Smith v. Cooley Dickinson Hospital, Inc., 282 F.3d 60,  67 (1st Cir. 2002) (First Circuit upheld the granting of summary judgment). This burden is on 'the proponent to convince the judge that in the circumstances of the case a failure to respond is so unnatural that it supports the inference that the party acquiesced in the statement." Vazquez v. Lopez-Rosario, 134 F.3d 28, 35 (1st Cir. 1998) (citations omitted) (First Circuit upheld the granting of summary judgment).

In the present case, there are multiple occasions where the Plaintiff's silence and conduct act as an admission that probable cause existed for Plaintiff's arrest for disorderly conduct and included Plaintiff's interaction with Judge McGuiness and Mike Farnum in Lowell District Court; his failure to file an Internal Affairs complaint with LPD, his conversations with officials at the Sex Offender Registry Board ("SORB"), and his failure to speak with Lowell Sun reporter Christopher Scott.

### A.    Judge McGuiness

If Kinney's version of the events is what occurred, probable cause existed for the Plaintiff's arrest and all of his claims must fail as a matter of law as a Lowell District Court official was required to review Kinney's police report to determine if probable cause existed to arrest Plaintiff for disorder conduct. See Exhibit H.

Under Massachusetts law, "[a] criminal proceeding shall be commenced in the District

Court by complaint…"  Mass.R.Crim.P.3(a). A complainant "shall convey to the court the facts constituting the basis for the complaint" where the "complainant's account shall be either reduced to writing or recorded" that is signed under oath before the appropriate judicial officer. Mass.R.Crim.P.3(g)(1). "The appropriate judicial officer shall not authorize a complaint unless the information presented by the complainant establishes probable cause to believe that the person against whom the complaint is sought committed an offense."  Mass.R.Crim.P.3(g)(2). If the criminal action involves a warrantless arrest that is prosecuted in the Commonwealth of Massachusetts's District Court trial system, District/Mun.Cts.R.Crim.P.2(a) requires the following:

> Prior to the issuance of a criminal complaint in a case commenced by warrantless arrest, the clerk-magistrate shall obtain from the police department responsible for the arrest a written statement describing the facts constituting the basis for the arrest. This requirement may be satisfied by providing to the clerk-magistrate a copy of the arresting officer's police report at the time the Application for Complaint is filed…

See also, Commonwealth of Massachusetts District Court Administrative Regulation, No.5-75 (Amended October 1, 2008), Promulgation of Standards of Judicial Practice, The Complaint Procedure (Revised October 1, 2008): Standard 2:00 – Initiating the complaint procedure for persons arrested without a warrant; Standard 2:01 – Processing the application for complaint; Standard 2:02 – Determining Probable Cause; Standard 2:03 – Authorizing the complaint and determining the proper charges; and 2:04 Denying an application after arrest.

Before the Plaintiff was arraigned before Judge McGuiness, probable cause was determined to exist for his arrest by a Lowell District Court official. The police report recites Plaintiff's initial confrontation with Kinney, the subsequent confrontation, Kinney's repeated warnings to cease and desist and upon Plaintiff's failure to cease and desist, his arrest for being a disorderly person. See Exhibit D. A determination of probable cause is an absolute bar for all claims relating to allegations of a false or wrongful arrest. Mustafa v. City of Chicago, 442

F.544, 547 (7th Cir. 2006).

At the time Plaintiff was arraigned, he had the option of how to proceed in his criminal case – Plaintiff could challenge his arrest as to whether he was a disorderly person or he could pay $200 in court costs and have the matter dismissed; Plaintiff chose to pay $200 to have the case dismissed Lowell Uncontested Facts, ¶¶26 and 28. Under G.L.c.272, §53, the maximum fine for a disorderly person is two hundred dollars ($200). While Plaintiff testified at his deposition that he is unable to remember whether or not he spoke to the judge, the court proceedings are clear. Rather than contest his arrest, the Plaintiff responded by stating the following regarding his criminal case: "Good morning, Your Honor"; "I'll take that, Your Honor"; "Ah, I can pay today, Your Honor" and "Thank you, Your Honor." After hearing Plaintiff could pay today, Judge McGuiness exclaimed, "Wonderful." Lowell Uncontested Facts, ¶28. A person falsely charged would have stated he was falsely arrested for trying to file a citizen's complaint on an officer who engaged in deliberate misconduct. That person would not pay any amount let alone the maximum amount allowed by law. Plaintiff did not even offer any reason why the court costs should be lowered and more in line with what Farnum suggested. These contrite statements, his silence and conduct considering the facts as he alleges are the actions of an individual who made a mistake, was lawfully arrested, but as he had no criminal record, the court did not want to start a criminal record absent some egregiousness; it had him pay court costs for his poor judgment on March 22, 2008 that resulted in arrest. These acts are not consistent with an innocent person who was being framed by an LPD officer.

**B.    Michael Farnum**

While Plaintiff testified at his deposition that he is unable to remember whether or not he sought out his friend LPD prosecutor Michael Farnum to discuss how to handle his disorderly conduct criminal charge, Farnum recalled both of Plaintiff's visits on the day of his arraignment.

Lowell Undisputed Facts, ¶23-30. Before Plaintiff's arraignment, when Farnum asked what happened, Plaintiff became quiet, lowered his eyes and bowed his head and acted very contrite. Lowell Undisputed Facts, ¶23-25. Plaintiff acknowledged what happened; stated he wanted his arraignment to be low keyed; and asked Farnum how to proceed to which Farnum responded by telling him to plead guilty and the court would probably have to pay fifty dollars ($50), and Plaintiff agreed. Lowell Undisputed Facts, ¶23-25. This response is so unnatural if Plaintiff's allegations are to be believed. Farnum's description of this encounter is consistent with the Plaintiff's tone and demeanor at his arraignment. Notably, it is only after Plaintiff had paid his $200 and his criminal complaint was dismissed did Plaintiff speak and act to Farnum in a manner one would expect of a person claiming to be "railroaded" would do. Plaintiff scowled, pointed his finger at Farnum; told him what happened was wrong; that he shouldn't have been arrested and by being upset. Lowell Undisputed Facts, ¶30-31.

## C.   LPD – Internal Affairs

At some point before his arrest on Monday, March 22, 2008, Plaintiff called 911 and spoke to a LPD dispatcher on a recorded police line where although he is given the change to explain the nature of his call, Plaintiff makes no mention of his being harassed or his civil rights being violated by Kinney. Lowell Undisputed Facts, ¶30-31. Plaintiff was able to speak to LPD Dispatch without Kinney's knowledge so there was no reason for Plaintiff not to explain the reason for his emergency 911 call. As someone who has worked for law enforcement agencies for approximately seventeen (17) years at the time of the incident, Plaintiff knew or should have known that when he picked up his telephone and dialed 911 as opposed to calling the non-emergency police line, his call had to be emergency. A long-time law enforcement official who has worked as a victim witness advocate for over ten (10) years does not call 911 and treat it like a private business line and repeatedly ask to be connected to the commander in charge unless that

law enforcement official's judgment was significantly impaired, such as being intoxicated. If Plaintiff allegations as set forth in his Amended Complaint are to be believed, he knew he was on an emergency line and he was calling because there was an emergency, the emergency being he was being harassed by an LPD who was still on the scene and that LPD should send the Commander in Charge over immediately to investigate or get Kinney to cease and desist his behavior. Yet Plaintiff makes no such statements.

Further, while Plaintiff claimed that he called LPD on March 22, 2008 to file a citizen's complaint against Kinney, he never filed any such complaint; this despite the fact that Plaintiff knew at least two high ranking LPD officials, Captains William Taylor and Arthur Ryan and that Plaintiff went to LPD to get a copy of his police report and purportedly spoke to Taylor shortly after his March 2008 arrest. Lowell's Uncontested Facts, ¶¶2, 32, and 33. If Plaintiff thought highly enough of LPD to call a 911 line in the early morning hours of March 22, 2008 in an attempt to file a citizen's complaint regarding an officer's deliberate misconduct, there is no reason why Plaintiff (who ends up getting falsely arrested by that same officer as a result of this very call if Plaintiff is believed) does not to file a citizen's complaint. This is completely unnatural and literally makes no sense. This is especially true for a politically active, long-time law enforcement official who knows high ranking LPD officials. The reason for Plaintiff's silence and conduct as admissions where he failed to explain on a recorded emergency telephone line and failed to file a citizen's complaint is because Plaintiff's versions of the events did not occur. Similarly, Plaintiff never filed any complaint or spoke to anyone at the Middlesex County District Attorneys Office, his former employer or the Attorney General's Office of Massachusetts concerning his allegations of police misconduct. Lowell's Uncontested Facts, ¶¶34.

**D.    Sex Offender Registry Board**

Further admission by silence and/or conduct is found in Plaintiff's two short interactions with officials at the SORB. According to Plaintiff, although he had the ability to communicate with SORB during non-work hours such as Saturday, March 22nd or Sunday, March 23rd, he did not inform anyone about his 12:51AM arrest on March 22nd until after the disorderly person charge was dismissed on Monday, March 24, 2008. Lowell's Uncontested Facts, ¶¶39-41. A law enforcement official who was falsely arrested would most certainly report this to his or her supervisor forthwith; only a person with something to hide would not disclose an arrest until after it was dismissed only after paying $200. In addition, given that neither official asked or inquired from the Plaintiff as to the facts or circumstances that resulted in his arrest or subsequent dismissal where Plaintiff did not file any statement or report with SORB, where Plaintiff was unaware of any SORB investigation and where one supervisor told him not to worry about it, Lowell Undisputed Facts, ¶¶39-41, it is reasonable to infer that Plaintiff did not claim to either official that he was falsely arrested on fictitious charges by an officer who fabricated evidence. If that had been the case, it is hard to believe that SORB would not conduct some kind or investigation (or at the very least obtain get a written statement from Plaintiff) and refer it to another law enforcement agency such as LPD, the Middlesex County District Attorneys Office, or the Attorney General's Office for Massachusetts.

E.   **Lowell Sun Newspaper**

In his First Amended Complaint, Plaintiff alleges that "the local newspaper the Lowell Sun publicized his arrest...[and] he had to explain the arrest to the Executive Office of Public Safety which was fielding inquiries from the media about his arrest." Plaintiff's First Amended Complaint, ¶25. However, before this lawsuit, the Lowell Sun only mentioned his arrest twice. The first was literally a blip in the Lowell Sun's Arrest Log on Monday, March 24, 2008. Lowell's Uncontested Facts, ¶38. The second time, it was a follow up article by reporter

12

Christopher Scott that ran two days later on March 26, 2008 where it reports that, "Nuon did not respond to repeated messages left on his cell, home and work phones" and where Plaintiff admits that Scott called his cell and work phone numbers. Lowell's Uncontested Facts, ¶39. Plaintiff had the opportunity to tell the Lowell Sun in March 2008 his version of the events yet he did not return any of Mr. Scott's telephone calls. Considering Plaintiff claims in his First Amended Complaint that the SORB was fielding telephone calls from the media and he spoke to his supervisors on Monday, March 24, 2008, it is unnatural that a person would fail to return telephone calls from the media inquiring about his arrest if that person was falsely arrested for a story that ran on Wednesday, March 26, 2008 two days after the Plaintiff's charges were dismissed and was the single article written about Plaintiff's arrest prior to the filing of this lawsuit. Further, Plaintiff's own deposition testimony concerning his two brief conversations with his supervisors shows this allegation that he "explain his arrest" to SORB given the media inquires is dramatically exaggerated, if not altogether factually incorrect.

Given the number of instances where Plaintiff gave several and repeated admissions by both his silence and his conduct all of which are consistent with Kinney's version of the incident and show that probable cause existed for the Plaintiff's arrest on disorderly conduct as previously determined by Lowell District Court and Plaintiff cannot maintain any of his counts against either defendant.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, the City of Lowell asks that this Court allow the Defendant City of Lowell's Motion for Summary Judgment and award judgment in its favor.

Respectfully submitted,
**CITY OF LOWELL**

/s/ Brian W. Leahey
Brian W. Leahey, Asst. City Solicitor
BBO # 567403
City of Lowell - Law Department
375 Merrimack Street 3rd Fl.
Lowell MA 01852-5909
Tel: 978-970-4050
Fax: 978-453-1510

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was filed through the Electronic Case Filing System for filing and electronic service to the registered participants as identified on the Notice of Electronic Filing on August 16, 2010.

/s/ Brian W. Leahey
Brian W. Leahey, Assistant City Solicitor