UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VESNA NUON, | ) <br> ) |
|   Plaintiff, | ) <br> ) |
|   v. | )   Civil Action No. 09-11161-LTS <br> ) |
| CITY OF LOWELL and <br> BRIAN M. KINNEY, | ) <br> ) <br> ) |
|   Defendants. | ) <br> ) |

MEMORANDUM AND ORDER ON PLAINTIFF NUON
AND DEFENDANT KINNEY'S CROSS-MOTIONS FOR SUMMARY JUDGMENT

March 4, 2011

SOROKIN, M.J.

  The Plaintiff, Vesna Nuon, brings claims against the City of Lowell and Defendant Brian M. Kinney arising from Kinney's March 21, 2008, arrest of Nuon on a charge of disorderly conduct, an arrest which Nuon asserts was not supported by probable cause and was motivated by his protected speech. Nuon brings claims against Kinney pursuant to 42 U.S.C. § 1983 and M.G.L. c. 12, §§ 11H and 11I, the Massachusetts Civil Rights Act (MCRA), in addition to common law claims for false imprisonment and malicious prosecution. Nuon's sole claim against the City of Lowell is for negligence, pursuant to the Massachusetts Torts Claims Act, M.G.L. c. 258.

1

Currently pending are Nuon and Kinney's cross-motions for summary judgment. For the following reasons, Nuon's motion for Partial Summary Judgment (Docket # 30) is ALLOWED IN PART and DENIED IN PART. Kinney's motion (Docket # 32) is DENIED.

I.       FACTUAL AND PROCEDURAL BACKGROUND

The Court has drawn all facts recited herein (other than undisputed background facts unrelated to the arrest at issue) from Kinney's account of the events at 174 Hale Street in Lowell on Friday evening, March 21, 2008. Although Nuon disputes portions of Kinney's account, he nevertheless concedes that the Court is obliged in reviewing his motion to view the record in the light most favorable to Kinney, the nonmoving party, and to draw all reasonable inferences in Kinney's favor. Docket # 31 at 2, n.2; See infra at 6.

On March 21, 2008, Nuon was visiting a friend, Chun Leng, at Leng's home at 174 Hale Street in Lowell. Docket # 31-2 at 63-64. He arrived at about 9:40 p.m. Id. at 68. On that night, Kinney was working a 5:00 p.m. to 1:00 a.m. patrol shift, in uniform and without a partner. Docket # 31-3 at 17, 19. At approximately 12:10 a.m. on March 22, Kinney was dispatched to 174 Hale Street to respond to a call involving an unwanted male. Id. at 20-21. 174 Hale Street is a two-story residential building, with a small front yard and a walkway leading to a front porch. Id. at 23. Kinney parked in front of the driveway. Id. at 27. Nuon was standing in the front yard as Kinney arrived. Id. at 28. Kinney asked Nuon if he had called the police. Id. at 30. Nuon seemed upset and responded, "No, nobody called the police. Nobody wants you here." Id. At that point, Kinney was not sure if Nuon might be the "unwanted male" referenced in the call to police. Id. at 49. Sambat Or (a resident of the rear apartment) then appeared at the back of the house in the driveway and indicated that he had called the police. Id. at 30-31.

2

Kinney and Nuon had no further interaction at this point, and Kinney accompanied Or to the back of the house. Id. at 33. Or told Kinney that he had called the police because his minor daughter had left the house with a boyfriend against his wishes. Id. at 34, 36. Or's daughter's boyfriend was the unwanted male referenced in the call to police. Id. at 39. Kinney then completed a missing person report. Id. at 35. Kinney spent approximately twenty minutes completing the report. Id. at 36.

As Kinney returned to the police cruiser, Nuon was still standing in the yard and had been joined by another male (who, like Nuon, appeared to Kinney to be in his late thirties). Id. at 39-40. As Kinney walked by, Nuon pointed at Kinney and said to his companion, "[t]hat's him. that's the guy right there." Id. at 40. Kinney stopped and asked Nuon if he could help him with something. Id. Nuon responded "no," angrily and loudly ordered Kinney to "get off the property." Id. Kinney testified that, "[h]e was very angry, it was like he was upset at me for nothing." Id. Nuon had remained in the same spot as he spoke, but pointed and waved his arms. Id. at 44-45. The two men were three-to-four feet apart. Id. at 45. Kinney was puzzled as to the reason for Nuon's behavior because "he ha[d] nothing to do with the call." Id. Nuon's speech was slurred and Kinney smelled alcohol and suspected that he had been drinking. Id. at 46. He considered Nuon's behavior to be irrational. Id. at 47. Kinney asked Nuon if he lived there, and Nuon answered that he did not but indicated that his companion did. Id. at 48. Kinney then asked to see Nuon's identification. Id. Kinney testified that at this point, he believed Nuon's behavior came close to subjecting him to arrest for disorderly conduct. Id. at 52, 77.

Nuon told Kinney that his identification was inside the house. Id. at 53. Kinney asked Nuon to retrieve it, and Nuon retreated inside the house, followed by Kinney. Id. Kinney

3

requested that an additional car be dispatched to his location. Id. at 58. Nuon gave his identification to Kinney, and Kinney made a warrant check. Id. at 56. While Kinney waited for the results, Nuon was upset and indicated that he felt that Kinney was harassing him and that he wanted to speak to his supervisor. Id. He was no longer screaming and yelling, or even loud. Id. at 59. When the warrants check was negative, Kinney asked the dispatcher for a criminal record check as well. Id. at 62. When that was also negative, Kinney returned Nuon's identification, suggested to both men that they stay inside, and then left the residence. Id. at 64, 68. Before Kinney reached his cruiser, Nuon yelled, "you're a coward, hiding behind your badge, get off my property." Id. at 68. Both men were on the porch, and Kinney asked Nuon's companion, "can you get him in the house?," which generated no response from the companion. Id. Nuon, however, became more upset, pointing towards the cruiser and yelling, "you can't tell him what to do. You can't tell me what to do," and repeating that Kinney should "get off the property." Id. Kinney then warned Nuon that he needed to be quiet, or Kinney would arrest him for disorderly conduct. Id. at 72. Nuon responded that Kinney could not arrest him and repeated his demand that Kinney leave. Id. Kinney then came up to the porch and arrested Nuon. Id.

Kinney testified that at no point did Nuon threaten physical violence or the use of any physical force. Id. at 82. He felt that Nuon's behavior delayed and inconvenienced a police investigation (i.e., that of the missing juvenile) and had the potential to disturb and disrupt the neighborhood after midnight. Id. at 83. Kinney was not aware of anyone who was actually disturbed by Nuon's behavior, and did not see anyone come out of their home, nor did he see lights turned on in neighboring homes. Id. at 84. Other than a house to the left and to the rear, 174 Hale Street is surrounded by commercial buildings and empty parking lots. Docket # 31-6.

4

Nuon was charged with one count of disorderly conduct under M.G.L. c. 272, § 53, and was arraigned at the Lowell Division of the District Court on Monday, March 24, 2008. At the arraignment, the charges against Nuon were dismissed upon his payment of $200 in court costs. Docket #31, Ex. D (Criminal Docket in the Matter of <u>Commonwealth v. Vesna Nuon</u>, Lowell District Court, Docket No. 0811CR001943).

On July 9, 2009, Nuon filed this action. Docket # 1. His Amended Complaint brings five claims against Kinney: Count I, pursuant to 42 U.S.C. § 1983, for arresting him without probable cause in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States; Count II, pursuant to 42 U.S.C. § 1983, for arresting him in retaliation for his protected speech, in violation of the First Amendment to the United States Constitution; Count III, pursuant to the MCRA, for arresting him without probable cause and in retaliation for protected speech, both in violation of the Massachusetts Declaration of Rights and the Constitution of the United States; Count IV, for false imprisonment, brought pursuant to Massachusetts common law; and Count V, for malicious prosecution, brought pursuant to Massachusetts common law. Docket # 23-1. In Count VI, Nuon brings a negligence claim against the City of Lowell.[1] <u>Id.</u>

Nuon now moves pursuant to Fed. R. Civ. P. 56 for partial summary judgment on Counts I-IV against Kinney. Docket # 30 - 31. Kinney moves for summary judgment on all counts directed against him. Docket # 32.[2]

---

[1] The City has also moved for summary judgment on the count directed against it, and this motion is the subject of a separate Order, issued this day.

[2] The Court notes that while Nuon has opposed the Defendants' motions, the Defendants have not filed any separate oppositions to Nuon's motion. A cross motion for summary judgment is not ordinarily sufficient to oppose the other party's motion. One reason is that in evaluating the

II.   DISCUSSION

   Summary Judgment Standard

   Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

   A.   **Nuon's Motion for Summary Judgment**

   Counts I and III, Probable Cause for the Arrest

   Under the Fourth Amendment to the United States Constitution, the right to be free from unreasonable searches gives rise to a requirement that an arrest be supported by probable cause. See Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause exists where "the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." United States v. Figueroa, 818 F.2d

---

cross motions, the Court is obliged in each case to view the evidence in the light most favorable to the non-moving party. Thus, the record evidence to be considered with regard to the Defendants' cross motions is not precisely the same evidence as is in play when evaluating the Plaintiff's motion. The Court will, in this instance, treat the Defendants' cross motions as their oppositions to the Plaintiff's motion, however, the better practice is for counsel to file a formal opposition.

1020, 1023 (1st Cir. 1987) (quoting Beck, 379 U.S. at 91). The exact degree of certainty required to establish probable cause is difficult to quantify, but it falls somewhere between bare suspicion and what would be needed to justify conviction. Burke v. Town Of Walpole, 405 F.3d 66, 80 (1st Cir. 2005) (citing Valente v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003)). Probable cause is evaluated as of the moment an arrest is made, based on the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information. Beck, 379 U.S. at 91.

The probable cause analysis entails "'an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not of the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-471 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)). Where "there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," the existence of probable cause for an arrest is an issue for the jury; on the other hand, where the historical facts are established or undisputed, the issue becomes a mixed question of law and fact suitable for determination by the court. Maxwell v. City of Indianapolis, 998 F.2d 431, 434 (7th Cir.1993). See also Ornelas v. United States, 517 U.S. 690, 696 (1996); Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 8-9 (1st Cir. 2004).

The standard for probable cause for arrest under Article 14 of the Massachusetts Declaration of Rights mirrors that of the Fourth Amendment to the United States Constitution.[3] See, e.g., Commonwealth v. Kotlyarevskiy, 59 Mass. App. Ct. 240, 243 (2003); Commonwealth v. Santaliz, 413 Mass. 238, 240-241 (1992).

---

[3] Liability under the MCRA (alleged in Count III of the Complaint) may be predicated upon violations of either the federal or state constitutions.

Kinney arrested Nuon for disorderly conduct pursuant to Mass. Gen. Laws ch. 272, § 53. The interpretation of the term "disorderly" for purposes of section 53 has had a "tortured history" in Massachusetts jurisprudence. Commonwealth v. Sholley, 432 Mass. 721, 727 (2000). In various decisions, the Supreme Judicial Court (SJC) has clarified and construed the meaning of that term and of the statute such that now (and since at least the SJC's decision in Sholley in 2000, if not substantially earlier) "[w]hat remains of the definition of 'disorderly' conduct is subsections (a) and (c) of § 250.2 of the Model Penal Code, with any application of subsection (c) restricted to cases not involving protest or other expressive activities (as required by Feigenbaum decision)." Id. at 728.

The relevant portion of the Model Penal Code defines a disorderly person as one who "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . (a) engages in fighting or threatening, or in violent or tumultuous behavior; . . . or (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." Model Penal Code § 250.2. The Model Penal Code further provides that "'[p]ublic' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are . . . any neighborhood." Id.

Regarding subsection (a), "'[f]ighting' is descriptive of conduct which by its very nature involves the use of physical force or violence or any threat to use such force or violence . . ." Commonwealth v. Sinai, 47 Mass. App. Ct. 544, 548 (1999). Nothing in the record suggests such conduct by Nuon, and Kinney has not argued otherwise in his papers. "Tumultuous behavior" includes "riotous commotion and excessively unreasonable noise so as to constitute a

8

public nuisance."[4]  A Juvenile, 368 Mass. at 597.  See also Commonwealth v. Sholley, 432 Mass. 721, 730 (2000) ("Noisy behavior that attracts a crowd of onlookers is a common feature of cases involving 'tumultuous' conduct."). It entails acts other than speech; "neither a provocative nor a foul mouth transgresses the statute." Commonwealth v. LePore, 40 Mass. App. Ct. 543, 546 (1996). Expressive conduct, even of a coarse and vulgar nature, cannot be punished as a disorderly offense. Commonwealth v. Richards, 369 Mass. 443, 445-46 (1976).

Two further legal points bear mention.  First, the SJC has clearly and unequivocally

---

[4]  At the end of his oral argument, Kinney's counsel conceded, for purposes of the summary judgment motion only, that probable cause was not established under the "tumultuous behavior" prong and instead contended that Kinney had probable cause to arrest under subsection (c).  In his papers, however, Kinney argued the issue in exactly the opposite manner – he contended the arrest was proper under the "tumultuous behavior" prong and never advanced a subsection (c) argument. Accordingly, the Court nonetheless has undertaken the tumultuous behavior analysis.

Moreover, nothing in the record supports the application of subsection (c), and Kinney makes no meaningful argument to that effect. Massachusetts courts have found hazardous or physically offensive conduct to include acts such as the throwing of stink bombs, the strewing of nails or other dangerous substances in public passageways, or urinating in public.  See Commonwealth v. A Juvenile, 368 Mass. 580, 587 (1975); see also Commonwealth v. Molligi, 70 Mass. App. Ct. 108, 111 (2007) (defendant's open carrying of a knife on a public street, defiance of an officer's commands, and attempt to evade arrest combined to create a hazardous and physically offensive condition).  In his deposition, Kinney alleges that Nuon "was creating a hazard by delaying and inconveniencing a police investigation."  Docket # 31-3 at 83.  Kinney's counsel did not advance this argument in his briefing, although he suggested it at the hearing. The argument is without merit.

When Kinney left Or's home, he was heading for his cruiser with his investigation at this location done.  Id. at 39.  Or had previously come "very close to" Kinney at the time that Kinney was asking Nuon if he had called the police, Or then volunteered that he had called the police. See Docket # 31-3 at 30-33.  There is no record evidence suggesting that Or mentioned Nuon as having any possible connection to the investigation, either when Or approached Kinney in the driveway, or during the twenty minutes in which Kinney interviewed Or in his apartment.  See, e.g., Id. at 30-39, 50-51.  Thus, Kinney could not reasonably believe that Nuon was the unwanted male or had any connection to the missing juvenile report.  Simply put, Nuon told Kinney to do the very thing Kinney was already planning to do – leave the premises.  See Docket # 31-3 at 39 (when he saw Nuon the second time, Kinney said he "was proceeding back to my cruiser to turn in the paperwork").  No reasonable inference can be drawn from these facts that Nuon was obstructing a police investigation or interfering with Kinney's official duties.

9

rejected subsection (b) of the Model Penal Code under which a person is guilty of disorderly conduct if he "makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present." See A Juvenile, 368 Mass. at 594-95 (1975). In Sholley, the SJC reiterated this holding. Sholley, 432 Mass. at 727-28.

Second, "tumultous behavior" is more than merely "unreasonable noise." The First Circuit, construing Massachusetts law on disorderly conduct, reversed a jury instruction including within the meaning of disorderly conduct "excessively unreasonable noise late at night in a residential neighborhood so that people in the privacy of their homes are unable to avoid that noise." Veiga v. McGee, 26 F.3d 1206, 1213 (1st Cir.1994). The Court stated "if the SJC thought that protected speech uttered in a loud voice could lawfully be regulated, then it would not have felt compelled to extricate the 'mak[ing of] unreasonable noise' from the definition of disorderly." Id. Finally, the First Circuit noted that disorderly conduct and disturbing the peace are different offenses. Id. at 1214. "Under Massachusetts law, speech alone does not constitute 'disorderly' conduct." Id. The Veiga court cited favorably a case from this district illustrating these points. Id. (citing U.S. v. Pasqualino, 768 F.Supp. 13 (D.Mass.1991) (Harrington, J.)). In that case, officers speaking with a person about alleged criminal conduct requested the person to get out of his car, which was parked in a hotel lot. Pasqualino, 768 F.Supp. at 14. The person "began screaming and yelling and using profane language." Id. Despite the officers' direction to calm down and get out of the car, the man persisted, and after a further warning, the officers arrested the person for disorderly conduct. Id. The person's yelling was loud enough to attract the attention of hotel guests, yet Judge Harrington ruled that it did not rise "to the level of 'riotous commotion' or 'public nuisance,'" and the First Circuit cited the case favorably in

10

discussing what constitutes disorderly conduct. Id. at 15; Veiga, 26 F.3d at 1214.

Turning to the facts of this case, Kinney described Nuon as "confrontational" and "belligeren[t];" with conduct including "screaming," "ranting and raving," "moving his arms," pointing and "yelling" at Kinney, and refusing to heed Kinney's warnings that he would be arrested for disorderly conduct if he did not stop yelling and go inside the house. Docket #34 at ¶¶ 2-6; Docket #36-5 (Arrest Report); Docket # 31-3 (Kinney Deposition at 30, 45, 68). Kinney alleges that Nuon's behavior was "out of control and extremely disruptive," "causing a public disturbance." Docket #36-5; Docket # 34 at ¶ 6.

Viewed in the light most favorable to Kinney, his description of Nuon's conduct does not rise to the level of either a "riotious commotion" or a "public nuisance." Crediting Kinney's account, Nuon's yelling or screaming was "excessively unreasonable noise late at night in a residential neighborhood,"[5] but that alone is not disorderly conduct. Veiga, 26 F.3d at 1213-14. Apart from the manner (yelling, screaming or belligerent conduct) or perceived rationality of Nuon's expression, his actual conduct consisted of waving his arms and pointing in the direction of Kinney's cruiser. The duration of the entire event was short; there were three brief interactions. Each interaction was separated by unremarkable behavior (and a lack of noise). There is no evidence of Nuon exhibiting conduct of a disorderly nature during the time that Kinney spoke with Or. In addition, Kinney offers no evidence of disorderly conduct during the time period he used Nuon's license to investigate whether Nuon had a criminal record or any

---

[5] The neighborhood may be more accurately described as partially residential, given the fact that there are houses to the left and to the rear of 174 Hale Street while the property is abutted on the front and right (across the streets) by commercial buildings and empty parking lots. Docket # 31-3 at 25-26; Docket #31-6 (Photographs of 174 Hale Street and Adjacent Properties).

outstanding warrants.[6]

Of course, Nuon did not obey Kinney's orders either to stay inside the house or to stop telling Kinney to leave. However, "[a] police officer is not a law unto himself; he cannot give an order that has no colorable legal basis and then arrest a person who defies it." Iacobucci v. Boulter, 193 F.3d 14 at 25 (1st Cir.1999). Context matters here. These directions to Nuon came after Kinney had left Or's home. Kinney had no reasonable basis to believe Nuon was the unwanted male that was the subject of the call to police or was in any way connected to that male. Kinney himself viewed his work at 174 Hale Street as completed and was walking down the driveway to his cruiser on the street. See Docket # 31-3 at 39. Nuon yelled at him to leave – precisely what Kinney himself intended to do. At that moment, Nuon was lawfully on private property expressing his opinion regarding the actions of a public official and there was no probable cause that he was committing the offense of disorderly conduct. Moreover, Kinney advances no legal basis to support his order to Nuon to stay inside the home (beyond his assertion that Nuon had already committed disorderly conduct).

In short, Kinney's account, viewed in the light most favorable to him, establishes that he lacked probable cause to arrest Nuon for disorderly conduct and does not create a genuine issue of material fact regarding the existence of probable cause to support Nuon's arrest. That, however, is not the end of the matter. In his motion for summary judgment, Kinney argues that he is entitled to qualified immunity. Docket # 33.

The principle of qualified immunity shields a police officer from liability for civil damages when his conduct does not violate clearly-established statutory or constitutional rights of

---

[6] There is also no evidence whatsoever of disturbance of any other persons. While that is not a required element of disorderly conduct, it is a common feature of many disorderly conduct cases.

which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Anderson v. Creighton, 483 U.S. 635, 641 (1987). The qualified immunity standard is not a stringent test, and gives ample room for mistaken judgments by protecting all but the plainly incompetent and those who knowingly violate the law. Hunter v. Bryant, 502 U.S. 224, 229 (1991). This protection is afforded to police officers so that they need not always err on the side of caution from fear of being sued. Id. Thus, Kinney is entitled to qualified immunity so long as the presence of probable cause to arrest Nuon for disorderly conduct is at least arguable. Anderson, 483 U.S. at 641; Ricci v. Urso, 974 F.2d 5, 7 (1st Cir.1992). The MCRA affords the same standards of qualified immunity for public officials as does 42 U.S.C. § 1983. Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 595 (2001)(citing Duarte v. Healy, 405 Mass. 43, 46-48 (1989)).

The aforementioned case law clearly established that unreasonable noise does not provide probable cause for the offense of disorderly conduct. Moreover, federal and Massachusetts case law clearly established that neither speech nor expressive conduct can properly form the basis of an arrest for disorderly conduct. See Houston v. Hill, 482 U.S. 451, 461 (1987) ("[T]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.'); Norwell v. Cincinnati, 414 U.S. 14 (1973) (per curiam) (reversing conviction for disorderly conduct because defendant could not be punished for voicing his objections to a questionable detention by a police officer); A Juvenile, 368 Mass. at 597-599. Therefore, at the time that Kinney arrested Nuon, there existed case law sufficient to clearly establish that, if a court were presented with such a situation, the court would find that the plaintiff's rights were violated.

Compare Hall v. Ochs, 817 F.2d 920, 925 (1st Cir.1987).

In the next step of the qualified immunity analysis, the inquiry is whether a reasonable officer similarly situated to Kinney would have recognized that his conduct violated an established constitutional norm. See Mihos v. Swift, 358 F.3d 91, 106 (1st Cir.2004). In the context of a false arrest claim, only a clear absence of probable cause will defeat a claim of qualified immunity. See Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir.1985).

Even accepting his version of events,[7] Kinney has failed to establish that he had probable cause to arrest Nuon. Kinney asserts that "a reasonable police officer would have arrested Plaintiff for disorderly conduct, as Plaintiff's behavior amounted to actions that 'disturb the public tranquility, or alarm and provoke others.'" Docket # 33 at 7, citing Aregata v. Commonwealth, 353 Mass. 287, 303-304 (1967). There is, however, no evidence of any actions disturbing the public tranquility or alarming or provoking others. In short, no objectively reasonable police officer confronted with Kinney's version of the facts could have believed that there was probable cause to arrest Nuon for disorderly conduct. Although not cited by Kinney, the Court has also reviewed subsequent decisions citing the language from Aregata relied upon by Kinney. The closest factually to this case is Commonwealth v. Pina, 67 Mass. App. Ct. 1118 (2006), in which the defendant and others were "yelling, staggering around and appeared intoxicated [and] as officers began to question the defendant he became 'agitated and began yelling at the officers.'" He continued yelling, flailing his arms and refused to remain seated. Id. The Court affirmed his conviction, however, finding that the "noise and commotion [created by

---

[7] Kinney advanced the qualified immunity argument on his motion for summary judgment, predicated upon his version of the events. Here the Court considers the issue on Nuon's motion, but on Kinney's facts.

defendant] attracted the attention of several customers of the nearby Dunkin Donuts, who left the store and began looking in the direction of the officers," who were investigating the Defendant and several others for his intoxicated behavior on a public street during a "fracas" which had preceded the officers arrival. See also Commonwealth v. Hyatt, 67 Mass.App.Ct. 1114 (2006) (focusing on the defendant's "conduct," noting that the defendant's actions caused "alarm" in one person and determining that her "implicit threat" combined with her "violently slamming a door" supported the conviction). Finally, at oral argument, Kinney's counsel asserted that Commonwealth v. Mulero, 38 Mass.App.Ct. 963 (1995) supported either a probable cause finding in this case, or the application of qualified immunity. It supports neither. A key fact in that decision was the defendant "shoving his hands into the pockets of his baggy shorts [while the officer was attempting to pat frisk him for weapons] especially in light of [the officer's] previous encounter with the defendant on a gun charge." Id. at 965. Those distinct facts in no way support a finding of probable cause in this case.

Accordingly, Kinney lacked probable cause to arrest Nuon and the arrest is not protected by qualified immunity. The Plaintiff is entitled to judgment in his favor on Counts I and III, as to liability.[8]

---

[8] An arrest without probable cause also establishes liability under the MCRA. The MCRA was intended to provide a state law remedy co-extensive with 42 U.S.C. § 1983, except that the MCRA also reaches private action, and requires a showing that a constitutional violation was effected "by threats, intimidation or coercion." See Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989); Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985). An arrest without probable cause has been found to constitute coercion within the meaning of the MCRA. See Daley v. Harber, 234 F. Supp. 2d 27, 31-32 (D. Mass. 2002) (holding that a police officer's actions in effecting arrest without probable cause constituted coercion under the MCRA); Zurakowski v. D'Oyley, 46 F. Supp. 2d 87, 88 (D. Mass. 1999) (stating that "the undisputed coercion involved in taking Zurokowsky [sic] into custody supplied that element of the Massachusetts civil rights claim."). See also Santiago v. Felton, 891 F.2d 373, 383 (1st

Counts II and III, First Amendment Claim

In Count II, Nuon alleges that Kinney violated the First Amendment to the United States Constitution by arresting him in retaliation for his protected speech.

Kinney asserts that this claim is redundant "because the gist of Plaintiff's case is a Fourth Amendment claim against Officer Kinney for arrest without probable cause." Docket # 33 at 5 (citing Guiterez v. Massachusetts Bay Transp. Auth., 437 Mass. 496 (2002)). This is the entirety of Kinney's argument, and the Court is unable to locate the case cited, but presumably Kinney's argument is that the analysis required for the First Amendment claim is co-extensive with that required under the Fourth Amendment probable cause standard, and that whichever party prevails on the Fourth Amendment claim necessarily prevails on the First Amendment claim as well.

This is not the case. The First Circuit has approved jury instructions directing that an officer could be liable under the First Amendment even where the arrest was supported by probable cause, if the jury found that an officer's intent or desire to curb the expression was the determining or motivating factor in making the arrest. Tatro v. Kervin, 41 F.3d 9, 18 (1st Cir.1994). In the present case, whether or not Kinney had probable cause to arrest Nuon on a disorderly conduct charge (and the Court has found he did not), he nevertheless may not arrest him because of his speech. The content of Nuon's speech to Kinney (even on Kinney's version of the facts) was protected. See Hill, 482 U.S. at 461) ("[T]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal

---

Cir.1989) (finding that if there was no probable cause for plaintiff's arrest, he can seek redress under 42 U.S.C. § 1983 and under the MCRA); Sarvis v. Boston Safe Deposit & Trust Co., 47 Mass. App. 86, 92-93 (1999); Reprod. Rights Network v. President of the Univ. of Mass., 45 Mass. App. 495, 508 (1998).

16

characteristics by which we distinguish a free nation from a police state.'"). Speech directed at police which was considerably more hostile and abusive than that which was directed toward Kinney has received First Amendment protection. See Id. (citing Lewis v. City of New Orleans, 415 U.S. 130 (1974) (arrestee yelled obscenities and threats at an officer); Duran v. City of Douglas, Ariz., 904 F.2d 1372 (9th Cir.1990) (arrestee directed obscene gestures at officer). The Supreme Court noted in Hill that it has repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them. Hill, 482 U.S. at 465.

Nonetheless, Nuon is not entitled to summary judgment on this claim. Giving all reasonable inferences to Kinney, a jury could reasonably conclude that Kinney's arrest was not motivated by a desire to curb Nuon's protected speech, but rather that Kinney in good faith, but incorrectly and without lawful basis, believed he had probable cause to arrest Nuon for disorderly conduct because Nuon appeared drunk and was unreasonably loud. Nuon's motion for partial summary judgment is DENIED as to Count II and as to that portion of Count III which is based upon an arrest in retaliation for protected speech under the MCRA.

### Count IV, False Imprisonment

Nuon next alleges that he is entitled to judgment as a matter of law on his claim that Kinney committed the common law tort of false imprisonment by arresting him without probable cause.

"The tort of false imprisonment consists of the (1) intentional and (2) unlawful (3) confinement of a person, (4) directly or indirectly (5) of which the person confined is conscious or is harmed by such confinement." Noel v. Town of Plymouth, Mass., 895 F. Supp. 346 (D.

Mass.1995) (citing Santiago, 891 F.2d at 383). See also Wax v. McGrath, 255 Mass. 340, 342 (1926) (unlawful restraint by force or threat constitutes false imprisonment); Ortiz v. County of Hampden, 16 Mass. App. 138, 140 (1983) (same). False arrest is a species of the tort of false imprisonment. See Wallace v. Kato, 549 U.S. 384, 391 (2007). In an action for false arrest, the defendant bears the burden of proving justification for any arrest for which he is responsible. See, e.g., McDermott v. W.T. Grant, 255 Mass. 736 (1943).

The Court has previously found that Kinney has not established probable cause to support his arrest of Nuon and that he is not entitled to qualified immunity from suit. Therefore, his intentional restraint of Nuon (in the form of an arrest) was unjustified and unlawful. The undisputed facts establish that Nuon was conscious of the restraint and, in at least a legally cognizable way, was harmed by it.[9] Thus, Nuon has established all of the required elements of a false imprisonment claim, and he is entitled to judgment as a matter of law on Count IV, as to liability.

B. **Defendant Kinney's Motion For Summary Judgment**

For the reasons discussed supra with respect to Nuon's Motion for Partial Summary Judgment (that is, that Kinney lacked probable cause for the arrest of Nuon and is not entitled to

---

[9] Nuon alleges that

> [a]s a direct and proximate result of the acts of Defendant Kinney, [he] endured emotional pain and suffering. He was distressed and humiliated. . . . He was photographed and fingerprinted during the booking process. Although the criminal charge was dismissed at arraignment, the local newspaper Lowell Sun publicized his arrest. He endured further distress when he had to explain the arrest to the Executive Office of Public Safety which was fielding inquiries from the media about his arrest.

Docket #23-1 at ¶ 25.

qualified immunity), Kinney's motion is DENIED with respect to Counts I, III and IV.

With respect to Count II, the Court has noted in the course of considering Nuon's motion (on Kinney's facts) that a reasonable jury could conclude that the determining or motivating factor in Kinney's arrest of Nuon was not Nuon's protected speech, but rather, Kinney's mistaken belief that he had probable cause to arrest Nuon on the basis of his apparent drunkenness and his boisterous, loud behavior (without regard to the content of his speech). See supra at 18. Likewise, giving all reasonable inferences to Nuon on Kinney's motion, the Court finds that a reasonable jury could conclude that the determining or motivating factor in Kinney's decision to arrest Nuon was his protected speech. On this point, Kinney would not be entitled to qualified immunity. It was clearly established at the time of Nuon's arrest (and has been at least since the Hill decision in 1987) that Kinney could not choose to arrest Nuon in retaliation for his protected speech. See, e.g., Mullen v. Town of Falmouth, 1995 WL 464913 (D.Mass.1995) (Wolf, J.) ("When the plaintiffs were arrested on August 21, 1988, it was clearly established that federal law prohibited police officers from making arrests in retaliation for comments made to the arresting officer," citing Hill, 482 U.S. at 461). Kinney's motion is therefore DENIED as to Count II.

Kinney has also moved for summary judgment on the malicious prosecution claim in Count V of the Amended Complaint (which was not addressed in Nuon's motion).[10] To prevail on a claim of malicious prosecution, a plaintiff must prove that the defendant instituted a prior civil or criminal proceeding without probable cause and with improper purpose, and that the prior proceeding terminated in favor of the plaintiff (who was the defendant in the prior proceeding).

---

[10] Kinney's briefing makes no specific reference to the malicious prosecution claim, but the motion appears to seek judgment as a matter of law on all claims, as it states several times that the Complaint must be dismissed in its entirety.

Billings v. Commerce Ins. Co., 458 Mass. 194, 196-97 (2010). Thus, if Kinney had arrested Nuon with probable cause, he would be entitled to summary judgment on this claim.[11] For the reasons noted supra, however, the Court has concluded that Kinney lacked probable cause for the arrest. He therefore fails to carry his burden on his own motion for summary judgment, and that motion is also DENIED with respect to Count V.

III    CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment (Docket #30) is ALLOWED, as to liability, on Counts I, III and IV and is DENIED on Count II. Defendant Kinney's Motion for Summary Judgment (Docket #32) is DENIED.

The Court will hold a status conference on March 14, 2011 at 2:00 p.m in Courtroom #24.

/s/ LEO T. SOROKIN
Leo T. Sorokin
UNITED STATES MAGISTRATE JUDGE

---

[11] It is undisputed that the prosecution of Nuon was dismissed.